UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DALTON J. HUTTO, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 3:14-CV-1990-CAN |
|  | ) |  |
| CAROLYN COLVIN, | ) |  |
| Acting Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

On October 27, 2014, Plaintiff Dalton J. Hutto filed a complaint in this Court seeking reversal of the Social Security Commissioner's final decision to deny his application for disability benefits. Alternatively, Hutto seeks a remand for further consideration of his application. Hutto filed his opening brief in this matter on March 19, 2015. On February 6, 2015, the Commissioner of Social Security ("Commissioner"), filed a response asking the Court to affirm the decision denying benefits. This matter became ripe on July 1, 2015, when Hutto filed his reply brief. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.     PROCEDURE**

On March 7, 2011, Hutto filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. §§ 416(i), 423 alleging disability beginning January 24, 2011. The Social Security Administration ("SSA") denied Hutto's application initially on August 22, 2011, and upon reconsideration on March 9, 2012. Upon Hutto's timely written request, a video hearing was held on May 7, 2013, before an administrative law judge ("ALJ") where Hutto appeared from Elkhart, Indiana, and an impartial vocational expert also testified. On June 11, 2013, the ALJ issued her decision finding that

Hutto was not disabled at Step Five of the evaluation process and denied his application for benefits. On August 26, 2014, the Appeals Council denied Hutto's request for review, making the ALJ's decision the final decision of the Commissioner. Hutto then sought judicial review of the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g) by filing his complaint in this Court on October 27, 2014.

## II. RELEVANT BACKGROUND

Hutto was born on February 6, 1962, and was 48 years old on the alleged disability onset date. Hutto dropped out of school in the tenth grade. Hutto engaged in past relevant work as a construction laborer, carpet installer, material handler, and labor production conveyor tender. At the time of the May 2013 hearing, Hutto was contributing to household chores, but was not engaged in work outside the home.

### A. Plaintiff's Testimony

At the ALJ hearing, Hutto confirmed his symptoms, past work history, and activities of daily living. Hutto testified that he had a stroke in January 2011 and also suffered from breathing problems and back problems. Hutto confirmed that he stopped working in September 2009 when he and his family moved from Florida to Indiana and that he lives with his mother and brother. Hutto explained that he performs some chores around the house such as loading the dishwasher, taking out the garbage, and grocery shopping.

In addition, Hutto testified that he is unable to work due to the effects of the stroke, including pain in his right arm and leg. Because Hutto only challenges the ALJ's incorporation of his mental impairments into his RFC, there is no need to outline in full Hutto's testimony about his physical symptoms, which also include shortness of breath due to chronic obstructive pulmonary disease. Generally, however, Hutto testified that his pain has improved some since

the stroke occurred, but that he is unable to drive long distances, carry large items, or walk or stand for very long and remains significantly fatigued during the day. Hutto stated he spends most of his day at home sitting and watching TV or going to doctor appointments for himself, brother, or mother.

As to the effects of his mental impairments, Hutto testified that he is not a good reader, but can fill out a job application. He also testified that he became depressed because of his pain, which prevents him from working in construction like he did in Florida before the stroke. Hutto further stated he has a hard time getting motivated to get up in the morning due to depression, that he is nervous in crowds, and that he has trouble focusing and concentrating even though his medication helps. Hutto also indicated that he has trouble remembering things and forgets conversations.

### B. Medical Evidence

The record before this Court documents Hutto's visits to various doctors from January 24, 2011, the date of his stroke, through April 16, 2013. The Court only references here the medical evidence related to Hutto's mental impairments that are relevant to the issues raised in this case.

As part of the application process for disability benefits, Hutto underwent a psychological consultative examination with Renee Buskirk, Ph.D. in July 2011. At the examination, Hutto presented with complaints of short-term memory loss since the stroke, as well as word finding difficulties, confusion, and expressive and receptive language deficits. *Id.* at 295. He indicated that he sometimes forgot he had taken his medications and would mistakenly take them again. *Id.* Dr. Buskirk observed that Hutto displayed a subdued mood and appeared slightly disheveled. *Id.* at 297. His speech was slow paced with noticeable verbal

3

retrieval problems and was somewhat unintelligible due to a speech impediment. *Id.* Dr. Buskirk reported that Hutto's thought process and content were slow and hesitant with impaired reasoning, a mildly impaired working memory, and impaired delayed verbal recall. *Id.* During the examination, Hutto also became confused during a serial sevens exercise. Dr. Buskirk also noted that Hutto demonstrated fair to poor insight, judgment, and abstract reasoning skills. *Id.* at 298. Hutto diagnosed Hutto with alcohol dependence based on his history of admitted drinking until 2009, stroke, a history of arrests until, and a GAF score of 50[1]. Dr. Buskirk opined that Hutto's symptoms would interfere with his social interactions and that he would likely need some supervision in the management of his funds. *Id.*

In August 2011, Hutto underwent an additional psychological consultative examination by Ryan Oetting, Ph.D., at which Dr. Oetting stated he was well-groomed, attentive, and gave a concerted effort. Dr. Oetting's examination included numerous standardized psychological tests to measure any cognitive deficit. Dr. Oetting noted that Hutto's speech production was slow. *Id.* at 300 during the tests, on which Hutto scored in the 2nd percentile, or extremely low range, for immediate memory with borderline scores in the areas of auditory, visual, visual working, and delayed memory. *Id.* at 301. Dr. Oetting concluded that Hutto's memory abilities were in the borderline range overall and diagnosed him with amnestic disorder due to stroke (provisional), borderline intellectual functioning, and a GAF score of 50. *Id.* Dr. Oetting also opined that Hutto would require the aid of a concerned individual to manage his funds. *Id.*

On August 22, 2011, Ken Lovko, Ph.D., a non-examining consultant, completed a Psychiatric Review Technique Form and a Mental Residual Capacity Assessment based on his review of Hutto's record available at the time. In addition to Hutto's medical record, Dr. Lovko

---

[1] According to the *Diagnostic and Statistical Manual of Mental Disorders – Fifth Edition* (DSM-IV), a GAF rating of 50 indicates "serious symptoms, or any serious impairment in social, occupational, or school functioning."

considered testimony of Hutto's sister who reported that Hutto is slower to process information since the stroke and cannot always follow along when watching movies or television shows. *Id.* at 197. She also indicated that his speech is sometimes hard to understand on the phone. *Id.* Dr. Lovko's review caused him to opine that Hutto had moderate limitations in concentration, persistence, and pace and that he retained the functional capacity to understand, remember, and carry out unskilled tasks without special considerations in many work environments. Dr. Lovko also opined that Hutto can relate, on at least a superficial basis, on an ongoing basis with co-workers and supervisors, attend to tasks for sufficient periods of time to complete them, and manage the stresses involved with unskilled work. *Id.* at 306–08.

### C. The ALJ's Determination

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed by the SSA regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ found Hutto had not engaged in substantial gainful activity since his alleged onset date of January 24, 2011. At Step Two, the ALJ found that Hutto has the following severe impairments: sequaellae of stroke[2], depression, amnestic disorder, and COPD. At Step Three, the ALJ found that none of Hutto's impairments or any combination of his impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Hutto retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b)[3] in that he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk about 6 hours; sit

---

[2] A sequela is an "affection following or caused by an attack of disease." DORLAND'S MEDICAL DICTIONARY, http://dorlands.com/def.jsp?id=100096124 (last visited July 28, 2016).

[3] Because the regulations governing DIB and SSI are identical, the Court will cite solely to the SSI regulations found in 20 C.F.R. pt. 416.

about 6 hours in an 8 hour workday; but only occasionally balance, stoop, kneel, crouch, and crawl. Additionally, the ALJ determined that Hutto cannot climb ladders, ropes, or scaffolds; must avoid concentrated exposure to unprotected heights or dangerous machinery; can perform no more than frequent handling and fingering; and must avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation. Further, the ALJ stated that Hutto is limited to simple, routine tasks of an unskilled nature; cannot perform work involving contact with the general public; and is limited to no more than brief and superficial contact with coworkers and supervisors in a setting and process that is relatively unchanging and not fast-paced.

At Step Four, the ALJ found that Hutto cannot perform past relevant work, has a limited education, and does not have transferable skills. At Step Five, the ALJ found that considering Hutto's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that he can perform. Based on these findings, the ALJ determined that Hutto had not been disabled from January 24, 2011.

## III.  STANDARD OF REVIEW

On judicial review under the Social Security Act, the Court must accept the Commissioner's factual findings as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). When an ALJ's decision is the final action of the SSA, the reviewing court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Id.*

In his decision, the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). In addition, a reviewing court is not to substitute its own opinion for that of the ALJ, or to re-weigh the evidence. *Id.* An ALJ must minimally express his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be certain that the ALJ considered the necessary evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not specifically address every piece of evidence in the record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

## IV. ISSUE FOR REVIEW

In this case, Hutto contends that the ALJ's opinion does not support her mental RFC finding that Hutto is limited to "simple, routine tasks of an unskilled nature with no work with the general public contact, and no more than brief and superficial contact with coworkers and supervisors in a setting and process which is relatively unchanging and not fast paced" ("the Simple Tasks Limitation"). Doc. No. 12 at 20. Hutto alleges that the ALJ failed to incorporate all of Hutto's mental limitations demonstrated by the record, including those identified by Dr. Buskirk and Dr. Oetting, the two SSA examining consultants. Specifically, Hutto argues that the Simple Tasks Limitation incorporated into Hutto's RFC failed to account adequately for either his severe memory deficits resulting from his stroke or his deficiencies of concentration, persistence, and pace that the ALJ herself had defined as moderate in her Step Three analysis of Hutto's severe impairments. Accordingly, Hutto also argues that the ALJ did not propound an accurate hypothetical question to the vocational expert.

Hutto relies on SSR 96-8p, 85-16, and *O'Connor-Spinner v. Astrue* to show that the ALJ's RFC failed to depict accurately the practical effects of Hutto's mental limitations as required under Agency policy. In addition, Hutto cites *Stewart v. Astrue*, 561 F.3d 679, 684–85

(7th Cir. 2009) to show that the Simple Tasks Limitation does not fulfill the ALJ's obligation to provide a detailed assessment of Hutto's mental limitations. For reasons discussed below, however, the Court finds that the ALJ's mental RFC determination here, including the Simple Tasks Limitation, is supported by substantial evidence and must therefore be affirmed.

    A.    **Standard**

An individual's RFC represents his maximum ability to work despite physical or mental limitations. 20 C.F.R. § 416.945(a)(1). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 416.912(c). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

Through a claimant's mental RFC, the ALJ must accurately depict the practical effects of the claimant's mental limitations. *Id.*; SSR 85-16. An RFC for "simple, routine tasks" may not account adequately for a claimant's moderate limitations in concentration, persistence, and pace. *Stewart*, 561 F3d at 685. For instance, an RFC and hypothetical limiting a claimant to simple, routine tasks may not adequately account for a claimant's limitations in concentration, persistence, and pace because the ability to perform simple, routine tasks differs from the ability

to stay on task. *See, e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)).

As a result, an ALJ that finds that a claimant has moderate limitations in concentration, persistence, and pace should generally include those limitations in any hypothetical to a vocational expert in order to orient the vocational expert to the totality of the claimant's limitations. *O'Connor-Spinner*, 627 F.3d at 618–19. Indeed, if limitations of concentration, persistence, and pace are not presented to the vocational expert, an ALJ's denial of disability benefits is not supported by substantial evidence. *Stewart*, 561 F.3d at 685; *see also O'Connor-Spinner*, 627 F.3d at 619–21; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). An ALJ that fails to capture all of a claimant's mental limitations in an RFC and hypothetical fails to "build the accurate and logical bridge from the evidence to the conclusion" as required to give a reviewing court the opportunity to provide the claimant with meaningful judicial review. *Young*, 362 F.3d at 1003 (internal quotation and citation omitted).

Nevertheless, inclusion of the specific terminology "concentration, persistence, and pace" in an RFC and hypothetical is not a per se requirement. *O'Connor-Spinner*, 627 F.3d at 619. Therefore, an ALJ's RFC and hypothetical that omits the terms "concentration, persistence, and pace" can be supported by substantial evidence if "it [is] manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.*

**B.     Analysis**

Here, Hutto seeks remand based on what appears to be a consistent concern among several circuits of the Court of Appeals that ALJs are regularly incorporating a "simple, routine

9

tasks" limitation into RFCs, but that the limitation does not adequately account for a claimant's limitations arising from moderate difficulties with concentration, persistence, and pace. *See Mascio*, 780 F.3d at 638. Hutto contends that the ALJ here has similarly failed to account for his difficulties with concentration, persistence, and pace as well as memory with the Simple Tasks Limitation. Hutto also asserts that the limitations reflected in the opinions of Dr. Buskirk and Dr. Oettting are not incorporated into Hutto's RFC.

The Court acknowledges that the ALJ's RFC, including the Simple Tasks Limitation, does not explicitly mention Hutto's limitations in concentration, persistence, and pace due to his difficulties with memory, social interaction, and slow, hesitant speech identified by Dr. Buskirk and Dr. Oetting. What the ALJ's analysis does show, however, is that Hutto's memory and other stroke-related symptoms do not prevent him from focusing long enough to complete a task, managing the stresses of unskilled work, or relating to co-workers and supervisors.

In support, the ALJ reported extensively on the results of Dr. Buskirk's and Dr. Oetting's examination of Hutto, including references to Hutto's memory tests. The ALJ reported Dr. Buskirk's opinion that Hutto "demonstrated fair to poor levels of judgment and insight, as well [as] fair to poor abstract reasoning skills" and that his "symptoms will interfere with his social interactions." Doc. No. 12 at 24. The ALJ then noted the results of Dr. Oetting's administration of the Wechsler Adult Intelligence Scale-IV to Hutto, which revealed Hutto's borderline scores in the auditory memory, visual memory, visual working memory, and delayed memory indexes and an extremely low score for immediate memory. *Id.* In addition, the ALJ also gave great weight to the opinion of Dr. Lovko, the non-examining consultative physician, who reviewed all the evidence in the record and concluded that Hutto "can relate on at least a superficial basis on

an ongoing basis with co-workers and supervisors . . . . can attend to a task for sufficient periods of time to complete tasks [and] can manage the stresses involved with unskilled work." *Id.*

Nevertheless, Hutto argues that the ALJ's RFC did not fully take the opinions of Dr. Buskirk and Dr. Oetting into account. Hutto specifically directs the Court to Dr. Buskirk's and Dr. Oetting's opinions that Hutto would need help managing his personal finances, which were not explicitly included in the ALJ's opinion.

Despite Hutto's arguments to the contrary, the ALJ's use of the Simple Tasks Limitation included limitations in keeping with all the evidence in the record. Indeed, the Simple Tasks Limitation is consistent with Dr. Lovko's opinion, which translated Hutto's moderate limitations in concentration, persistence, and pace into a functional assessment of his abilities even though it does not use the words "memory" or "concentration, persistence, and pace" explicitly. Accordingly, the ALJ's RFC determination is also consistent with the Seventh Circuit's holding in *Johansen v. Barnhart*, that the ALJ's limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental limitations because the state agency psychologist had essentially "translated [his] findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work." 314 F.3d 283, 288–89 (7th Cir. 2002).

Notably, the ALJ here incorporated even greater limitations into Hutto's RFC than those indicated by Dr. Lovko. For instance, the ALJ limited Hutto to a setting and process which was relatively unchanging and not fast-paced, which went further than Dr. Lovko had gone to accommodate Hutto's moderate difficulties with concentration, persistence, and pace. Therefore, by limiting Hutto to simple, routine tasks of an unskilled nature in a setting and process that was relatively unchanging and slow-paced and by limiting him to no work with the

general public and no more than brief and superficial contact with co-workers and supervisors, the ALJ effectively excluded those tasks that Hutto cannot perform due to his moderate difficulties with concentration, persistence, and pace. In other words, the ALJ used alternative language, but still accounted adequately for all of Hutto's limitations evidenced in the record as is acceptable under *O'Connor-Spinner*. *See* 627 F.3d at 619; *cf. Milliken v. Astrue*, 397 Fed. App'x 218, 221–22 (7th Cir. 2010).

### C. Conclusion

As discussed above, the ALJ built a logical bridge between the evidence of the record, including the evidence of Hutto's moderate difficulties in concentration, persistence, and pace resulting from his memory issues, and her RFC determination stated specifically in the Simple Tasks Limitation. As such, the ALJ's RFC is supported by substantial evidence and is consistent with SSA policy and controlling case law. In addition, because the ALJ incorporated all the limitations set forth in the RFC into the hypothetical presented to the vocational expert, the ALJ's determination that Hutto could perform a significant number of jobs in the economy was also supported by substantial evidence. *See Liskowitz v. Astrue*, 559 F.3d 735, 743 (7th Cir. 2009) ("Where . . . the VE identifies a significant number of jobs the claimant is capable of performing and this testimony is uncontradicted (and is otherwise proper), it is not error for the ALJ to rely on the VE's testimony.")

### V. CONCLUSION

Because the ALJ's incorporated all of Hutto's limitations into the RFC and presented a proper hypothetical to the vocational expert, the ALJ's RFC determination as well as her conclusion that Hutto is not disabled is supported by substantial evidence. Therefore, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). [Doc.

No. 16]. The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 8th day of August, 2016.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge